# United States District Court
# Central District of California

| | |
|---|---|
| CONVERSION LOGIC, INC., <br>     Plaintiff, <br> v. <br> MEASURED, INC., et al., <br>     Defendants. | Case No: 2:19-cv-05546-ODW (FFMx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [21]** |

## I.   INTRODUCTION

Plaintiff Conversion Logic, Inc. ("Conversion") brings an action against Measured, Inc. ("Measured"), Trevor Testwuide ("Testwuide"), Madan Bharadwaj ("Bharadwaj"), and Antonio Magnaghi ("Magnaghi"), (collectively, "Defendants"). (*See* Compl., ECF No. 1.) Pending before the Court is Defendants' Motion to Dismiss for failure to state a claim. (Mot. to Dismiss ("Mot."), ECF No. 21.) For the reasons that follow, the Court **GRANTS** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection to the instant Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Plaintiff Conversion Logic offers software and services analyzing which marketing efforts generate a return on investment. (Compl. ¶ 1.) Testwuide was Conversion's CEO, and Bharadwaj and Magnaghi were Conversion's formal advisors. (Compl. ¶ 3.) While at Conversion, Testwuide, Bharadwaj, and Magnaghi had access to Conversion's scientific and technical trade secrets, including "confidential and proprietary information related to Conversion['s] machine-learning-based techniques, methodologies, and data-science models." (Compl. ¶ 4.) The three also had access to Conversion's sales-related trade secrets including "confidential customer and sales information such as current and prospective customer lists, contact information, pricing information, and contracts." (Compl. ¶ 4.) Between 2014 and 2017, Conversion had entered into several contracts, which included various convenants, with Testwuide, Bharadwaj, and Magnaghi.[2]

In 2017, Testwuide left Conversion. (Compl. ¶ 10.) Within weeks, Testwuide and Bharadwaj started Measured, allegedly to compete against Conversion. (Compl. ¶ 10.) Defendant Magnaghi joined them and allegedly used Conversion's trade secrets to help build Measured. (Compl. ¶ 10.) Testwuide and Bharadwaj also allegedly solicited Conversion's customers and former employees. (Compl. ¶ 11.)

Testwuide entered into a Confidentiality Agreement. (Compl. ¶ 290; Vu Decl. Ex. A ("Confidentiality Agreement"), ECF No. 21-2.) The agreement indicated that Testwuide's obligation to maintain the confidentiality of Conversion's trade secrets "will survive expiration or termination of [the Confidentiality Agreement]." (Compl. ¶ 293.) Conversion alleges that Testwuide breached the Confidentiality Agreement by

---

[2] Defendants attach copies of the agreements referenced in the Complaint. (Decl. of Jacqueline Vu ("Vu Decl.") Exs. A–F, ECF No. 21-2.) As Conversion does not object to the consideration of the agreements (Opp'n to Mot ("Opp'n") 1 n.1, ECF No. 30), and the Court may consider agreements incorporated by reference to the Complaint, the Court considers the six agreements in the disposition of this motion. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (stating courts may consider documents incorporated by reference).

obtaining and refusing to return technical and sales-related trade secrets, soliciting former employees and current advisors of Conversion to join Measured, soliciting clients of Conversion such as AARP, and failing to disclose and assign rights of discoveries and inventions. (Compl. ¶¶ 294–299.) In August 2017, Testwuide also entered into a Separation Agreement with Conversion. (Compl. ¶ 300; Vu Decl. Ex. B ("Separation Agreement"), ECF No. 21-2.) Conversion alleges that Testwuide breached the Separation Agreement by misappropriating technical and sales-related trade secrets, soliciting advisors and former employees of Conversion to work for Measured, and disparaging Conversion both publicly and privately. (Compl. ¶¶ 303–305.)

Regarding Bharadwaj, on June 15, 2015, he entered into an Advisor Agreement with Conversion. (Compl. ¶ 308; Vu Decl. Ex. C ("Advisor Agreement"), ECF No. 21-2.) He allegedly breached the Advisor Agreement by misappropriating Conversion's technical and sales-related trade secrets, soliciting employees and advisors of Conversion to become employees of Measured, developing and failing to disclose and assign inventions, and providing services to Measured. (Compl. ¶¶ 314–318.) Bharadwaj also entered into two subsequent consulting agreements: the First Consulting Agreement on September 24, 2015 and the Second Consulting Agreement on June 1, 2016. (Compl. ¶¶ 319, 326; Vu Decl. Ex. D ("First Consulting Agreement"), ECF No. 21-2; Vu Decl. Ex. E ("Second Consulting Agreement"), ECF No. 21-2.) Bharadwaj allegedly breached both the First and Second Consulting Agreement by misappropriating Conversion's technical and sales-related trade secrets and failing to disclose and assign "inventions, discoveries, improvements, and copyrightable works." (Compl. ¶¶ 324, 325, 330, 331.) Conversion alleges that Bharadwaj also breached the Second Consulting Agreement by co-founding Measured and offering his services to Conversion's competition, and by soliciting Conversion's former employees, advisors, and clients. (Compl. ¶¶ 332–335.)

Regarding Magnaghi, on August 26, 2014, he signed the Advisory Services Letter Agreement. (Compl. ¶ 338; Vu Decl. Ex. F ("Advisor Services Agreement"), ECF No. 21-2.) Magnaghi allegedly breached the Advisor Services Agreement by misappropriating technical and sales-related trade secrets, failing to disclose and assign inventions and other discoveries to Conversion, and providing services to Measured. (Compl. ¶¶ 346–348.)

Plaintiff Conversion brings suit against Defendants alleging thirteen causes of action.[3] (*See* Compl. ¶¶ 265–424.) Defendants move to dismiss the breach of contract claims against Testwuide, Bharadwaj, and Magnaghi—the second, third and fourth claims respectively. (*See* Mot. 1.)

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial

---

[3] The thirteen claims are: (1) Misappropriate of Trade Secrets against all Defendants; (2) Breach of Contract against Testwuide; (3) Breach of Contract against Bharadwaj; (4) Breach of Contract against Magnaghi; (5) Unjust Enrichment and Restitution against Measured; (6) Fraud against Testwuide; (7) Concealment against Testwuide; (8) Conversion against Testwuide; (9) Conversion against Bharadwaj; (10) Conversion against Magnaghi; (11) Intentional Interference with a Contractual Relationship against all Defendants; (12) Intentional Interference with Prospective Economic Advantage against all Defendants; and (13) Breach of Fiduciary Duty against Testwuide. (Compl. ¶¶ 265–424.)

experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV. DISCUSSION

Defendants move to dismiss Conversion's second, third and fourth claims primarily because clauses in the six agreements at issue violate the California Business and Professions Code section 16600. (*See* Mot.9.) Conversion preliminarily argues that, even if those clauses were invalid, the motion should be denied as Conversion has adequately plead alternative unchallenged grounds for a breach of contract against Testwuide, Bharadwaj, and Magnaghi. (Opp'n 3–5.) Conversion alternatively asserts that the clauses are in fact valid under current California law. (Opp'n 6–20.) The Court addresses the arguments in turn.

### A. Alternative Allegations of Breach

Conversion asserts that the Defendants' motion is procedurally unsound, because it challenges some but not all of Conversion's allegations of breach of contract. (Opp'n 3–5.) For instance, Conversion notes that Defendants do not challenge its allegations that Testwuide, Bharadwaj, and Magnaghi misappropriated its trade secrets or that Testwuide disparaged Conversion. (Opp'n 4.) Defendants reply that they "challenge [only] the legal sufficiency of Conversion's breach of contract claims to the extent that they are based on restrictive covenants" in contravention to the law. (Reply in Supp. of Mot. ("Reply") 3, ECF No. 31.)

Defendants further contend that allegations based on the unlawful contract terms are separable from those allegations seeking to enforce valid contractual provisions. (Reply 4.)

Where a complaint "groups together multiple theories and operative facts which, if independently found to be valid, could each give rise to a right enforceable in the courts," each claim should be addressed separately. *Doe v. Napa Valley Unified Sch. Dist.*, No. 17-CV-03753-SK, 2018 WL 4859978, at *3 (N.D. Cal. Apr. 24, 2018) (internal quotation marks omitted); *Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840 (9th Cir. 2000) (stating claims founded on a separate transaction or occurrence are properly stated in separate counts).

Here, Conversion alleges several theories of breach based on several different contracts for each Defendant. (*See* Compl. ¶¶ 289–349.) Each theory involves different transactions or occurrences. For instance, allegations showing Testwuide made disparaging remarks about Conversion would show a breach of the covenant not to make such comments but would fail to demonstrate breach of the employee or customer non-solicitation provisions. However, sufficient proof of either theory may adequately give rise to a breach of contract claim. Accordingly, the Court may consider each theory independently in determining whether Conversion has sufficiently alleged a claim and dismiss allegations and theories that are barred by the California Business and Professions Code section 16600. *See Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1082 (C.D. Cal. 2011) (dismissing a claim to the extent that the plan is covered and preempted by ERISA while permitting the claim based on non-ERISA plans to proceed). The Court now addresses whether certain provisions in the contracts are void.

**B.     Non-Solicitation of Employees or Consultants Provision**

Defendants move to dismiss the breach of contract claim against Testwuide and Bharadwaj on the basis of the non-solicitation of employees or consultant clauses in

the Confidentiality Agreement and the Second Consulting Agreement because the clauses are void. (Mot. 11, 20.)

California Business and Professions Code section 16600 provides that, "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. The California Supreme Court has found that "section 16600 prohibits employee noncompetition agreements unless the agreement falls within a statutory exception." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 942 (Cal. 2008). In *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, the California appellate court extended *Edwards* to find that a provision for "nonsolicitation of employee" was void under section 16600. 28 Cal. App. 5th 923, 935 (2018). Though California appellate courts have distinguished *AMN*'s application of *Edwards*, such courts have consistently concurred with *AMN*'s reasoning as applied to employee agreements. *Quidel Corp. v. Superior Court*, 39 Cal. App. 5th 530, 539 (2019). "The strict application of section 16600 in the employment context is supported by the policy: California courts have consistently declared this provision an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." *Id*. (internal quotation marks omitted).

In *AMN*, the court found void the "broadly worded provision prevent[ing] individual defendants, for a period of at least one year after termination of employment with [plaintiff], from either 'directly or indirectly' soliciting or recruiting, or causing others to solicit or induce, any employee of [plaintiff]." *AMN*, 28 Cal. App. 5th at 936. The Court reasoned that the provision restrained individual defendants from practicing their chosen profession because it restricted who the employee could work with in their new position. *Id*.

The provisions at issue here mirror the provision discussed in *AMN*. The Confidentiality Agreement prohibits Testwuide for a period of one year following his

termination from Conversion from "directly or indirectly" "employing, engaging or soliciting" any employee who was an employee of Conversion during the twelve-month period immediately prior to the termination of his employment. (Confidentiality Agreement ¶ 5.) The Second Consulting Agreement states that Bharadwaj was prohibited during the period he was providing services to Conversion and for one year thereafter from "directly or indirectly, anywhere in the world, solicit[ing] for employment . . . any Conversion employee." (Second Consulting Agreement ¶ 10.) As in *AMN*, both provisions restrain Testwuide and Bharadwaj, respectively, from engaging in their profession by restricting who may work alongside them. Furthermore, the provision in the Confidentiality Agreement not only bars soliciting Conversion's employees, but also prohibits *hiring* Conversion's employees—a stricter restraint than in *AMN*.

Conversion relies on *Loral Corp. v. Moyes* to assert that certain non-solicitation provisions may be valid and argues that *Edwards* did not supersede the reasoning in *Moyes*. 174 Cal. App. 3d 268 (1985); (Opp'n 6–7.) However, in *AMN*, the court stated that it "doubt[ed] the continuing viability of *Moyes* post-*Edwards*" as "the *Edwards* court found section 16600 'unambiguous' . . . [and] 'if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect.'" *AMN*, 28 Cal. App. 5th at 938–39 (citing *Edwards*, 44 Cal. 4th at 950). Districts courts following *AMN* have declined to follow *Moyes*. *See WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 852 (N.D. Cal. 2019) (citing *Barker v. Insight Glob., LLC*, No. 16-CV-07186-BLF, 2019 WL 176260, at *3 (N.D. Cal. Jan. 11, 2019)). "[T]he Court is *not persuaded that the secondary ruling* in *AMN* finding the non-solicitation provision invalid under [*Moyes*] based upon those employees' particular job duties *abrogates or limits the primary holding* [which finds the clause violates section 16600]." *Id.* (emphasis added).

The Court finds the non-solicitation provisions at issue here at least as broad as those in *AMN*. Further, given the strong California public policy to permit lawful

employment and enterprise of choice, the Court finds the provisions void. Accordingly, the Court **GRANTS without leave to amend** the motion to dismiss the second and third causes of action as to the breach of contract claims premised on the employee non-solicitation provisions.

## C. Non-Solicitation of Customers Provision

Defendants also move to dismiss the breach of contract claims against Testwuide and Bharadwaj premised on the non-solicitation of customers provisions in the Confidentiality Agreement and the Second Consulting Agreement because Defendants contend the clauses are void. (Mot. 12, 20.) The Confidentiality Agreement states that Testwuide may not directly or indirectly solicit for a period of one year after the termination of his employment from Conversion "a customer or vendor or prospective customer or vendor of the Company." (Confidentiality Agreement ¶ 5.) The Second Consulting Agreement states that Bharadwaj may not, during the period he was providing services to Conversion and for one year thereafter, "directly or indirectly, anywhere in the world, solicit . . . companies known to [Bharadwaj] to be a customer or prospective customer of Conversion." (Second Consulting Agreement ¶ 10.)

The previously-discussed public policy apply here. In *Dowell v. Biosense Webster, Inc.*, the California Court of Appeals found the customer non-solicitation provision at issue "broadly worded" and restrained the employees from practicing their chosen profession, similar to other provisions that had been found void under section 16600. 179 Cal. App. 4th 564, 575 (2009).

Conversion contends that the customer non-solicitation provisions are valid under the trade-secret exception. (Opp'n 10–12.) However, the *Dowell* court "doubt[ed] the continued viability of the common law trade secret exception to covenants not to compete," although it did not reach that question. *Dowell*, 179 Cal. App. 4th at 575. The court ultimately determined that the provision at issue was so broadly worded that it could not be "narrowly tailored or carefully limited to the

protection of trade secrets." *Id.* (finding overbroad the provision prohibiting employees "for a period of 18 months postemployment from soliciting any business from, selling to, or rendering any service directly or indirectly to any of the accounts, customers or clients with whom they had contact during their last 12 months of employment.")

In *The Ret. Grp. v. Galante*, the California appellate court took a different approach. In *Galante*, the court recognized the "tension" between section 16600 and trade secrets but nonetheless found that section 16600 barred a court from "specifically enforcing . . . a contractual clause purporting to ban a former employee from soliciting former customers." 176 Cal. App. 4th 1226, 1238 (2009). The court reasoned that the conduct was enjoinable because it was wrongful independent of the contractual provision and arose to tortious heights by using trade secret information to identify and solicit existing customers. *Id*. at 1237 ("[I]t is not the *solicitation* of the former employer's customers, but is instead the *misuse of trade secret information*, that may be enjoined.") Per *Galante*, remedy may be granted for conduct that tortiously misuses trade-secrets, and Conversion alleges a separate cause of action for misappropriation of its trade secrets against all three individual defendants. (*See* Compl. ¶¶ 265–88.) Therefore, the Court does not address that analysis under breach of contract claim.

However, as for Conversion's breach of contract claim, the Court finds as in *Dowell*, the provisions in the Confidentiality Agreement and the Second Consulting Agreement are overly broad and could not be narrowly construed to protect trade-secrets alone. Accordingly, the Court finds the provisions void and **GRANTS without leave to amend** the motion to dismiss the second and third causes of action as to the breach of contract claims premised on the customer non-solicitation provisions.

**D.     Non-Competition Provision**

Defendants move to dismiss the breach of contract claim against Bharadwaj and Magnaghi premised on non-competition clauses in the Second Consulting Agreement and the Advisor Services Agreement because Defendants contend the clauses are void. (Mot. 20, 23.) Per the Second Consulting Agreement, Bharadwaj may not "provide services to companies known to be a customer or a prospective customer of [Conversion] that are directly competitive to Conversion['s] offerings" while he provides services to Conversion and for one year after he desists. (Second Consulting Agreement ¶ 10.) Magnaghi was allegedly bound by the Advisor Services Agreement which required him to notify Conversion in writing "prior to performing any services for or otherwise participating in a company developing or commercializing new services, methods, or devices which may be competitive with [Conversion]." (Advisor Services Agreement ¶ 9.)

Courts have repeatedly found that provisions prohibiting competition violate public policy and are accordingly void. *See Dowell*, 179 Cal. App. 4th at 575 (finding the customer non-solicitation provision void); *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 859 (1994) ("Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated . . . ."). However, where a noncompete provision bars competitive conduct while still employed, courts have found them permissible, especially as the prohibition likely protects an employer's trade secrets. *See W. Air Charter, Inc. v. Schembari*, No. CV 17-00420-AB (KSx), 2017 WL 10638759, at *8 (C.D. Cal. Oct. 6, 2017) ("[S]ection 7.4 [which prohibits competition during employment] is a provision that is necessary to protect Plaintiff's trade secrets"); *Sevigny v. DG Fastchannel, Inc.*, No. CV 11-9197 CAS (JEMx), 2011 WL 6149284, at *5 (C.D. Cal. Dec. 12, 2011) ("[Section 16600] is typically applied to invalidate 'certain far-reaching *postemployment* covenants not to compete.'")

Here, Conversion asserts that Bharadwaj and Magnaghi engaged in competitive conduct in contravention to the noncompete provisions in issue while they were still consulting for Conversion. (Opp'n 12.) However, Conversion's allegations are inconsistent regarding whether Bharadwaj and Magnaghi still consult for Conversion and unclear whether Bharadwaj and Magnaghi were consulting for Conversion when they engaged in the allegedly competitive behavior. (*Compare* Compl. ¶¶ 329, 341 *with* Compl. ¶¶ 332, 348.)

Accordingly, the Court **GRANTS with leave to amend** Defendants' Motion to Dismiss as to the third and fourth causes of action to the extent these breach of contract claims are premised on the non-competition provisions. The Court grants leave to amend to the extent Conversion can plead that Bharadwaj and Magnaghi breached the non-competition provisions while still providing services to Conversion.

**E.     Assignment of Intellectual Property**

Defendants move to dismiss the breach of contract claim against Testwuide, Bharadwaj, and Magnaghi premised on the assignment clauses in the Confidentiality Agreement, the First and Second Consulting Agreement, and the Advisor Services Agreement because Defendants argue these clauses are void. (Mot. 15, 17, 23.)

Intellectual property assignment provisions in employment contracts have been upheld when limited to inventions that are based on the employer's confidential information. *See Winston Research Corp. v. Minnesota Mining & Mfg. Co.*, 350 F.2d 134 (9th Cir. 1965); *but see Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009) (striking the assignment clause that targeted any inventions "relate[d] to former employees' work with [employer]" since such a clause would "encompass[] both inventions based on confidential employer information and inventions relating to former . . . employees' work in the broad field of semiconductor research and manufacturing") (internal quotations omitted). "As long [as] the assignment [of ideas and inventions] does not

extend to post-employment work, it is generally enforceable." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 946 (C.D. Cal. 2011).

Here, the assignment provision in the Confidentiality Agreement Conversion seeks to enforce against Testwuide states that all inventions shall be the sole and exclusive property of the Company. (Confidentiality Agreement ¶ 3.) "Invention" is defined (in relevant part) as "all Inventions . . . conceived or developed by Employee while employed with the Company or within one (1) year following termination of such employment which relate to or result from the actual or anticipated business, work, research or investigation of the Company or any of its Affiliates." (Confidentiality Agreement ¶ 3.) This provision not only extends the assignment provision beyond the length of the employment but also includes broad language sweeping up inventions and discoveries unrelated to Conversion's proprietary information. The Court therefore finds this clause void. Accordingly, the Court **GRANTS without leave to amend** the motion to dismiss Conversion's second cause of action against Testwuide on this basis.

The First Consulting Agreement between Conversion and Bharadwaj similarly states that "[t]he obligations of [Bharadwaj] set forth in [the section about IP Assignment] (including, without limitation, the assignment obligation) will continue beyond the termination of [Bharadwaj]'s engagement with [Conversion]." (First Consulting Agreement ¶ 7.6.) As above, the Court finds this clause void as well. Accordingly, the Court **GRANTS without leave to amend** the motion to dismiss Conversion's third cause of action against Bharadwaj on this basis.

The Second Consulting Agreement between the two does not require Bharadwaj to assign his rights beyond termination and instead states that "[i]mmediately upon the end of the Term . . . the consultant will deliver all such files and Work Product to Conversion" and requires Bharadwaj assign rights to inventions created "under or in performing the Services under [the Second Consulting Agreement]." (Second Consulting Agreement ¶¶ 9(b), (c).) As the provision limits

the assignment requirement to his work as a consultant for Conversion, the Court does not find the provision void. However, the Court **GRANTS with leave to amend** the motion to dismiss Conversion's third cause of action against Bharadwaj on this basis, for failure to state a claim as Conversion's Complaint is devoid of any detail. Conversion simply alleges "Bharadwaj breached the Second Consulting Agreement to the extent that he developed any work product that arose out of or resulted from his performance under the Agreement." (Compl. ¶ 331.) Conversion fails to allege that Bharadwaj developed a work product without assigning it to Conversion and such bald allegation cannot give adequate notice. *Ashcroft*, 556 U.S. at 678.

Finally, the Advisor Services Agreement Conversion seeks to enforce against Magnaghi states that "[i]nventions . . . conceived or developed by Employee while employed with the Company or within one (1) year following termination of such employment which relate to or result from the actual or anticipated business, work, research or investigation of the Company or any of its Affiliates" shall be assigned to Conversion. (Advisor Services Agreement ¶ 7(a).) Again, this provision not only extends the assignment provision beyond the length of the employment but also includes broad language sweeping up inventions and discoveries unrelated to Conversion's proprietary information. The Court therefore finds this clause void. Accordingly, the Court **GRANTS without leave to amend** the motion to dismiss Conversion's fourth cause of action against Magnaghi on this basis.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss certain theories of breach in the second, third, and forth causes of action (ECF No. 21). Where leave to amend was granted, Conversion has 14 days from the date of this Order to amend its complaint. Defendants must file an answer to the amended complaint, if one is filed, or the remaining claims in the Complaint as it stands in 28 days from the date of this Order

**IT IS SO ORDERED.**

December 13, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**